IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| JAMES BOWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO.: 1:06-CV-99 (WLS) |
| | ) | |
| JAMES A. HOTZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT JAMES A. HOTZ'S BRIEF
## IN SUPPPORT OF MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant James A. Hotz ("Dr. Hotz") and, pursuant to Federal Rule of Civil Procedure 56, hereby submits this Brief in Support of his Motion for Summary Judgment (the "Motion") on all counts of the Complaint filed by Plaintiff James Bowman ("Bowman" or "Plaintiff") in the above-styled action.

## INTRODUCTION

Plaintiff has failed to introduce any evidence to support a claim for malicious prosecution against Dr. Hotz. Plaintiff cannot establish even the most basic element of a claim for malicious prosecution – that Dr. Hotz took any action to instigate or initiate the prosecution against Plaintiff. The overwhelming uncontradicted evidence is that Dr. Hotz did absolutely nothing to attempt to have Plaintiff prosecuted – he did not file a police report, he did not swear out an arrest warrant, and he did not attempt to persuade anyone to prosecute Plaintiff. To the contrary, Plaintiff was indicted by two separate grand juries, and the district attorney has testified unequivocally that it was 100% his sole decision to bring the charges against Plaintiff before the grand jury. The district attorney never even spoke to Dr. Hotz before bringing the charges

against Plaintiff. Quite simply, Dr. Hotz had absolutely no involvement whatsoever in the initiation of the prosecution against Plaintiff. It is inconceivable that Plaintiff could be allowed to present this case to a jury where there is absolutely no evidence that Dr. Hotz was responsible in any way for Plaintiff's prosecution.

Plaintiff has similarly failed to adduce any evidence to support the other elements of malicious prosecution, that there was a lack of probable cause or that the prosecution was motivated by malice. Plaintiff's indictments by two grand juries are prima facie evidence that there was probable cause for his prosecution, and Plaintiff cannot rebut that presumption. There is no evidence whatsoever to suggest that Plaintiff's prosecution was motivated by malice on the part of anyone.

Nor has Plaintiff introduced any evidence to support his claim for intentional infliction of emotional distress. Indeed, Plaintiff himself readily admitted during his deposition that he has suffered no emotional damages as a result of his prosecution. Certainly there was no outrageous conduct on the part of Dr. Hotz, who played no role in Plaintiff's prosecution.

There is no dispute of material fact in this case, and Dr. Hotz is plainly entitled to summary judgment on all counts of the Complaint against him.

## **FACTUAL BACKGROUND**

This cases arises from Plaintiff's indictment for burglary and aggravated assault as a result of a visit he made to Dr. Hotz's home on August 22, 2004. The visit was made in connection with litigation that was pending at that time between Charles Rehberg ("Rehberg") and Phoebe Putney Hospital ("Phoebe").

**The Rehberg Litigation**

Beginning in September 2003 and continuing through March 2004, Rehberg sent out a series of anonymous faxes to businesses and individuals throughout the Albany, Georgia area in which he strongly criticized Phoebe and its management. These anonymous faxes were identified as "Phoebe Factoids." Phoebe filed a report with the Dougherty County District Attorney's office regarding the faxes because the faxes had been sent to a number of Phoebe offices, staff, and Board members, including Dr. Hotz. [Deposition of James A. Hotz, M.D., dated December 11, 2006 ("Dr. Hotz Depo."), the original transcript of which is being filed separately with the Court, at 113]. Dr. Hotz, moreover, had received at his office a very suspicious envelope with no return address that contained hard copies of two of the anonymous faxes along with a letter personally addressed to him. [Dr. Hotz Depo. at 113].

Phoebe was very concerned about the motives behind the anonymous faxes, particularly as they became increasingly vitriolic. Phoebe therefore instructed its outside general counsel to undertake an investigation to identify the sender of the faxes. Phoebe's outside general counsel hired two investigators, who worked to identify the sender of the anonymous faxes. [Deposition of C. Richard Langley dated January 31, 2007 ("Langley Depo"), the original of which is being filed separately with the Court, at 14-15]. In August 2004, they identified Rehberg as the sender of the faxes. The two investigators then attempted to interview Rehberg in the parking lot outside his office. Rehberg would not cooperate with the investigators, and Phoebe thereafter filed suit against him on August 18, 2004.[1]

Immediately following the parking lot incident between Rehberg and the investigators, Rehberg appealed to Richard Scruggs, a Mississippi plaintiff's lawyer, for assistance. Rehberg

---

[1] Phoebe Putney Health System, Inc. v. Charles Rehberg, Civil Action File No. 04CV-1890-1, filed in the Superior Court of Dougherty County, Georgia.

had been working with Scruggs in his attempt to pursue class action litigation against Phoebe for alleged disparate costs of treatment for indigent patients. Scruggs engaged Plaintiff, who had previously done work for him in connection with some of his other cases, including the tobacco litigation. [Deposition of James Odell Bowman dated November 30, 2006 ("Bowman Depo."), the original transcript of which is being filed separately with the Court, at 9, 16, 97; Deposition of Robert Seigfried dated April 18, 2007, the original transcript of which is being filed separately with the Court, at 59-61].

Plaintiff currently works as an investigator in Pascagoula, Mississippi. He is a former Navy Seal who served in the military for over eight years. [Bowman Depo. at 15-17]. Plaintiff then worked as a policeman in Imperial Beach, California, and in Pascagoula, Mississippi for over twenty years. [Bowman Depo. at 21-22]. Plaintiff generally carries a gun in his belt, and he owns several firearms, including a Glock 40, a Glock 9 mm, a .22, a shotgun, and a rifle. [Bowman Depo. at 77-78]. Plaintiff has been arrested twice for assault, once in approximately 1997 and once in approximately 2003, and he has killed a man in the line of duty. [Bowman Depo. at 22-24; 194-98].

Scruggs sent Plaintiff to Albany to act as a bodyguard for Rehberg and his family and to investigate the circumstances surrounding the parking lot incident. [Affidavit of Jim Bowman dated September 16, 2004, attached as Exhibit 8 to Bowman Depo., at ¶ 2; Bowman Depo. at 65; Deposition of Richard F. Scruggs dated April 10, 2007 ("R. Scruggs Depo."), the original transcript of which is being filed separately with the Court, at 18-20; Deposition of David Zachary Scruggs dated April 10, 2007 ("Z. Scruggs Depo."), the original transcript of which is being filed separately with the Court, at 9-11].

**Plaintiff's Intrusion into Dr. Hotz's Home**

Dr. Hotz – the inspiration for the title character in the Michael J. Fox movie "Doc Hollywood" – has lived with his family in the Albany area since approximately 1980. He has received numerous awards and recognitions over the past twenty years for his work in providing quality care to indigent patients. Dr. Hotz served on Phoebe's Board for 5 years and rotated off the Board in December 2004. [Dr. Hotz Depo. at 55].

On Sunday afternoon, August 22, 2004, Plaintiff appeared unannounced at the home of Dr. Hotz and his wife, Patricia Hotz ("Mrs. Hotz"). [Bowman Depo. at 121-22]. When Mrs. Hotz answered the door, Plaintiff asked to speak to Dr. Hotz. Mrs. Hotz believed that Plaintiff was there to speak to her husband about a healthcare matter – it is not uncommon for Dr. Hotz's indigent patients to come to his home. [Deposition of Patricia Pittman Hotz dated December 11, 2006 ("Mrs. Hotz Depo."), the original transcript of which is being filed separately with the Court, at 16, 39-40].

Dr. Hotz was exercising in their basement when Plaintiff arrived, and Mrs. Hotz left Plaintiff in the doorway and went downstairs to inform her husband that someone was there to see him about a healthcare matter. [Mrs. Hotz Depo. at 18; Dr. Hotz Depo. at 29]. Dr. Hotz came upstairs and welcomed Plaintiff into the living room, where he typically meets with patients who come to his home. [Dr. Hotz Depo. at 29, 60]. Plaintiff then advised Dr. Hotz that he was working for Rehberg's attorney and said that he wanted to talk to Dr. Hotz about the parking lot incident with Rehberg. [*Id*. at 29-30, 60]. Dr. Hotz refused to talk to Plaintiff about the Rehberg litigation and immediately asked Plaintiff to leave his home. [Dr. Hotz Depo. at 60-61]. Dr. Hotz repeatedly asked Plaintiff who he worked for. Although it was a hot summer day in Albany, Plaintiff was wearing a jacket. [Dr. Hotz Depo. at 59; Bowman Depo. at 72]. Just before leaving,

Plaintiff reached into his jacket pocket in an unusual way, and he eventually retrieved a business card, which he then thrust at Dr. Hotz. [Dr. Hotz Depo. at 61-63; Deposition of Vito John Bagnato dated April 12, 2007 ("Bagnato Depo."), the original transcript of which is being filed separately with the Court, at 42-43]. Dr. Hotz felt physically threatened and intimidated by Plaintiff's entry into his home and the unusual way in which Plaintiff reached into his jacket pocket and fumbled before producing the business card. [Dr. Hotz Depo. at 20, 57, 66, 89]. Additionally, after Plaintiff left Dr. Hotz's home, he sat in his car outside the home for some time. [*Id*. at 107, 176-78]

### Dr. Hotz's Actions Subsequent to the Incident at His Home

Despite his fear, Dr. Hotz did not report Plaintiff's intrusion into his home to the authorities. Instead, Dr. Hotz immediately contacted Phoebe's attorney, C. Richard Langley ("Langley"), based upon instructions that he had received as a Board member to notify Langley in the event he was contacted by anyone in connection with the Rehberg litigation. [*Id*. at 26; Langley Depo. at 28]. Dr. Hotz made notes immediately after the incident, and on Monday morning, he faxed to Langley his notes and a copy of the business card that Plaintiff had given to him. [Dr. Hotz Depo. at 25-26, 51, 72; Langley Depo. at 28, 33].

Langley advised Dr. Hotz that the incident would be reported to the ethics panel of the State Bar. [Dr. Hotz Depo. at 71; Langley Depo. at 32-33]. Dr. Hotz believed that he did not need to report the incident to the authorities because Langley would handle it through the appropriate channels. [Dr. Hotz Depo. at 73, 80-81].

Dr. Hotz was, however, still nervous as a result of Plaintiff's intrusion into his home. [*Id*. at 51]. Moreover, Dr. Hotz learned that Plaintiff had been interviewing his neighbors. In one instance, Plaintiff asked one of Dr. Hotz's neighbors if she knew about a recent trip that Dr. Hotz

had taken to Las Vegas for business.  [*Id*. at 85; Bowman Depo. at 203-05]. This information made Dr. Hotz even more concerned for his safety and that of his family.

It was arranged for Dr. Hotz to meet with one of the investigators who had worked on the Rehberg investigation, Larry McCormick, to discuss his concerns about Plaintiff. [Dr. Hotz Depo. at 51]. On September 16, 2004, Dr. Hotz met with McCormick, who is a former FBI agent. [*Id*. at 51, 54]. As Dr. Hotz testified, his "sole purpose with Mr. McCormick was to determine [his] safety – and what to expect." [*Id*. at 163]. Dr. Hotz asked McCormick whether he needed to get a restraining order against Plaintiff. [*Id*. at 89]. McCormick told Dr. Hotz that a restraining order would not be necessary because Plaintiff was a former police officer. [*Id*. at 89-90, 175-77]. McCormick did not recommend contacting law enforcement. [*Id*. at 175-76].

Unbeknownst to Dr. Hotz, McCormick summarized his recollection of the September 16, 2004 meeting in a memorandum (the "McCormick Memo") that he included in his Phoebe investigation file (the "Phoebe File"). [*Id*. at 56, 177; McCormick Memo, attached as Exhibit 6 to Dr. Hotz Depo.]. Also unbeknownst to Dr. Hotz, McCormick eventually gave the Phoebe File – which contained the McCormick Memo – to the Dougherty County District Attorney's office in connection with the investigation of the anonymous faxes. [Dr. Hotz Depo. at 163, 177; Deposition of James Patrick Paulk dated January 9, 2007 ("Paulk Depo."), the original transcript of which is being filed separately with the Court, at 11]. At the time the Phoebe File was provided to the district attorney's office, Dr. Hotz had never seen the McCormick Memo and did not even know that it existed, much less that it had been provided to the authorities. [*Id*. at 56, 177]

### The Criminal Proceedings

Although the Dougherty County District Attorney's office began the investigation into the anonymous faxes, District Attorney Ken Hodges ("Hodges") recused himself from the investigation after allegations of a conflict of interest surfaced. The case was assigned by Attorney General Thurbert Baker to Specially Appointed District Attorney Kelly Burke ("Burke") from Houston County, Georgia. Hodges asked James Paulk, an investigator from the Dougherty County District Attorney's office, to deliver the Phoebe File – which contained the McCormick Memo – to Burke.  [Deposition of Kelly R. Burke dated January 8, 2007 ("Burke Depo."), the original transcript of which is being filed separately with the Court, at 14; Paulk Depo. at 30-31].

Over a year after the incident at Dr. Hotz's home, Burke decided to bring charges for the anonymous faxes before the grand jury.  At that time, Burke read the McCormick Memo, which he assumed had been prepared by Paulk, who had done the initial investigation into the faxes. [Burke Depo. at 22-23]. Burke determined that charges should be pursued against Plaintiff for burglary and aggravated assault based upon the incident at Dr. Hotz's home.[2] [*Id.* at 20, 43].

Burke attempted to contact Dr. Hotz before presenting the case to a Dougherty County grand jury, but he was not able to reach him. [*Id.* at 12-15, 101-02]. Prior to December 14, 2005, Dr. Hotz never spoke to Burke or any other prosecutor or law enforcement officer about the prosecution of Plaintiff or the incident at his home. [Dr. Hotz Depo. at 12-15, 36, 72, 177; Burke Depo. at 32, 56-57, 101-02]. On that date, the grand jury indicted Plaintiff for aggravated assault and burglary. [Indictment of December 14, 2005 ("December 14th Indictment"), attached as Exhibit 3 to Burke Depo]. On his way back to Perry from the grand jury proceedings in Albany,

---

[2]  Burke also prosecuted Rehberg and Dr. John Bagnato for burglary and aggravated assault because he had evidence suggesting their connection to Plaintiff and his investigation work. The prosecutions of Rehberg and Bagnato are not relevant to Plaintiff's claims.

Burke called Dr. Hotz to notify him about the indictments and to warn him of potential press coverage. [Burke Depo. at 32, 56-57, 101-02]. Dr. Hotz and Burke spoke briefly and agreed to talk about the incident at a later date. [*Id*. at 57].

The December 14th Indictment was deficient, however, in that the date of the incident was inadvertently omitted. [*Id*. at 94]. On February 16, 2006, Burke presented the charges to a second grand jury. [*Id*. at 43-44]. This time, he advised Dr. Hotz that he needed to testify before the grand jury. [Dr. Hotz Depo. at 156-57, 160; Burke Depo. at 74-75]. Although Dr. Hotz did not want to become involved in the criminal process, Burke left him no choice but to "do his duty" and testify as requested. [Burke Depo. at 74-75; Dr. Hotz Depo. at 138-39, 156-57]. Dr. Hotz therefore testified before the grand jury as to his recollection of the incident at his home in August 2004. [Dr. Hotz Depo. at 44-47, 101-06]. Dr. Hotz's grand jury testimony was consistent with all of his previous statements about the incident, and he testified that Plaintiff "held his pocket in a way in his gesture to – that made me feel that there was something under there and it could have been a weapon, a gun." [*Id*. at 45-47.]

The second grand jury also returned an indictment against Plaintiff,[3] but after hearing Dr. Hotz's testimony, they reduced the charges to simple assault even though Burke had again sought charges of aggravated assault and burglary. [Burke Depo. at 34-35; Indictment of February 16, 2006, attached as Exhibit 5 to Burke Depo. at ("February 16th Indictment")]. There was a typographical error in the February 16th Indictment, which was corrected by a third indictment issued without additional testimony on March 1, 2006 by the same grand jury. [*Id*. at 69, 84-85, 118; Indictment of March 1, 2006, attached as Exhibit 7 to Burke Depo. at ("March 1[st] Indictment")].

---

[3] Bagnato and Rehberg were also charged in the second indictment.

On May 1, 2006, the Dougherty County Superior Court dismissed the criminal charges against Plaintiff on the ground that the allegations lacked sufficient specificity. [Order on Defs.' Special Demurrer, attached as Exhibit 4 to Compl.]. Three months after the dismissal, Plaintiff filed this lawsuit against Dr. Hotz seeking damages for malicious prosecution and intentional infliction of emotional distress. [Compl.].  Plaintiff is seeking $2 million in alleged damages against Dr. Hotz.

## ARGUMENT AND CITATION OF AUTHORITY

Plaintiff has asserted two counts in his Complaint: (1) malicious prosecution and (2) intentional infliction of emotional distress. For each count, Plaintiff bears the burden of proof on every essential element; if Plaintiff fails to satisfy his burden on any one element, Dr. Hotz cannot be liable. Summary judgment is proper because Plaintiff has failed entirely to develop or present any evidence on three essential elements of malicious prosecution and at least two essential elements of intentional infliction of emotional distress.

## I.    THE LEGAL STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is appropriate when, as in this case, the pleadings, affidavits, and other evidence adduced show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In federal court, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations omitted). The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

Furthermore, "[f]or issues on which the non-movant bears the burden of proof at trial, the moving party 'simply may show – that is, point out to the district court – that there is an absence of evidence to support the non-moving party's case.'" *Muscgrove v. Purdue Transp.*, No. 1:05-CV-27(WLS), 2007 WL 917285, at *1 (M.D. Ga. Mar. 23, 2007) (citation omitted). Once the moving party makes such a showing, "the adverse party may not respond to the motion for summary judgment by summarily denying the allegations set forth by the moving party" but instead must point to specific facts setting forth a genuine issue of fact for trial. *Id*. at *2. Dr. Hotz is entitled to summary judgment in this case because no genuine issue of material fact exists as to Plaintiff's claims and Dr. Hotz is entitled to judgment as a matter of law.

## II.    DR. HOTZ IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION.

There is no dispute of material fact, and Dr. Hotz is entitled to judgment as a matter of law on Plaintiff's claim for malicious prosecution because Plaintiff has failed to introduce evidence to support four (4) of the six (6) elements of the claim.

Under Georgia law, the essential elements of malicious prosecution are (1) prosecution for criminal offense instigated by the defendant; (2) issuance of a valid warrant, accusation, indictment, or summons; (3) termination in favor of the plaintiff; (4) malice; (5) want of probable cause; and (6) damage to the plaintiff.[4] *Kaiser v. Tara Ford, Inc.,* 248 Ga. App. 481, 486, 248

---

[4] Georgia law applies to the substance of Plaintiff's claims because federal jurisdiction in this case is based on the parties' diversity of citizenship. *See* 28 U.S.C. § 1332. A federal court sitting in diversity applies state substantive law and federal procedural law. *See Erie R. Co. v. Thompkins,* 304 U.S. 64 (1938). Therefore, Georgia law applies to Plaintiff's claims for malicious prosecution and intentional infliction of emotional distress.

S.E.2d 861, 867 (2001) (*citing* O.C.G.A. § 51-7-40). Dr. Hotz does not contest that a valid indictment was issued and that the criminal prosecution terminated in favor of Plaintiff. However, Plaintiff has failed to proffer a scintilla of evidence on which the jury could reasonably find for Plaintiff with respect to the other four (4) elements because (a) Dr. Hotz did not instigate the criminal prosecution against Bowman; (b) there was probable cause; (c) there was no malice on the part of Dr. Hotz; and (d) there were no damages to Plaintiff.

Moreover, Georgia's public policy favors the granting of summary judgment in malicious prosecution claims where there is insufficient evidence to support the claim. The Georgia Court of Appeals has explained that:

> public policy disfavors actions for malicious prosecution, particularly suits which impugn the grand jury process; the State has the right to prosecute crimes without the prosecutor's feelings being questioned, and citizens and police are encouraged to bring to justice those who are apparently guilty. Thus, as long as there was probable cause to prosecute and if there were no evidence of improper motive (malice) on the part of [defendants], summary judgment or a directed verdict for defendants would be in order.

*Smith v. Holeman*, 212 Ga. App. 158, 161, 441 S.E.2d 487, 492 (1994) (citations omitted). *See also Desmond v. Troncalli Mitsubishi*, 243 Ga. App. 71, 75, 532 S.E.2d 463, 467 (2000) (affirming summary judgment for defendant based on a lack of evidence of malice); *Holmes v. Achor Center, Inc.*, 242 Ga. App. 887, 889, 531 S.E.2d 773, 775-76 (2000) (affirming summary judgment for defendant based on a finding of probable cause). In this case, Plaintiff was prosecuted at the behest of the district attorney, based on probable cause and pursuant to the grand jury process. Therefore, public policy favors summary judgment as to Plaintiff's unsupported claims.

### A.     Dr. Hotz Did Not Instigate the Criminal Proceedings Against Plaintiff.

The most glaring deficiency in Plaintiff's claim is the complete lack of any evidence that Dr. Hotz played any role in instigating or initiating the prosecution against Plaintiff. In Georgia, it is "[i]nherent in this tort [of malicious prosecution] . . . that any prosecution must be *instigated* by the person sought to be held liable." *Kaiser*, 248 Ga. App. at 486, 346 S.E.2d at 867 (emphasis in original) (affirming summary judgment for defendant). Instigation can be shown by evidence that the defendant (a) initiated the criminal proceedings or (b) unduly influenced the decision to prosecute by providing information he knew to be false. *Id*. There is absolutely no evidence that Dr. Hotz instigated the criminal proceedings in this case.

### 1.     The initiation of criminal proceedings against Plaintiff was the independent decision of the district attorney.

A plaintiff cannot establish the first essential element of malicious prosecution where the "evidence affirmatively shows an absence of any causal link between those acts attributable to defendants and the decision to arrest [the] plaintiff." *McLeod v. Pruco Life Ins. Co.*, 215 Ga. App. 177, 179, 449 S.E.2d 895, 897 (1994). In *McLeod*, the court acknowledged some evidence that the defendants "did more than objectively report the facts they observed," but nonetheless affirmed summary judgment for the defendant based on the police detective's testimony that the decision to arrest plaintiff was solely his. *Id.*; *see also Tench v. Turner*, 201 Ga. App. 156, 157, 410 S.E.2d 357, 358 (1991) (affirming judgment for defendants who relayed information to the police because "[t]he decision to investigate and arrest [plaintiff] was made by the deputy sheriff alone"); *Dixie Beer Co. v. Boyett,* 158 Ga. App. 622, 623, 281 S.E.2d 356, 357 (1981) (reversing denial of summary judgment where the police officers' unrefuted testimony was that none of the defendants encouraged, commanded or intimated a need to arrest the plaintiff).

In this case, Specially Appointed District Attorney Kelly Burke made an independent decision to prosecute Plaintiff. This affirmative and undisputed evidence conclusively prevents a finding that Dr. Hotz caused or initiated the criminal proceedings. In relevant part, Burke's unrefuted testimony is as follows:

> **Burke:**    So it was never really a question of, "Dr. Hotz, what do you want to do?" I never really left it to him. I seldom do. When I think a crime's been committed, I'm going to pursue it. And I was pursuing it without particularly [sic] his concern about whether it should go forward or not. He never expressed to me anything other than he would just cooperate and do -- you know, answer any questions I ever gave him. And he did.

[Burke Depo. at 74-75].

> **Q:**    Jim Hotz didn't do anything to actively encourage your office to file or pursue any criminal charge or indictment against Mr. Bowman, did he?
>
> **Burke:**    No. And, frankly, neither did anybody else, the hospital as well. They didn't know it was coming.
>
> **Q:**    It was the independent decision of District Attorney Kelly Burke to seek and obtain each and every indictment against Mr. Bowman; is that true?
>
> **Burke:**    Yes.
>
> **Q:**    And you would say here today and, if necessary, if called upon before Judge Sands or a jury in the Middle District of Georgia, Albany Division, that the decision to seek an indictment and to prosecute Mr. Bowman was 100 percent your decision, the decision of District Attorney Kelly Burke; is that true?
>
> **Burke:**    Yes.

[*Id*. at 102-03 (emphasis added); *see also* Deposition of Robert Jeffrey Lasseter dated January 8, 2007, the original transcript of which is being filed separately with the Court, at 15 (Burke alone decided what charges to bring)]. Burke further denied that Dr. Hotz, as the victim of the alleged assault and burglary, sought or urged the prosecution:

> **Q:**    And as I used the distinction between a prosecuting witness as compared to a fact witness, Dr. Hotz was at no time in any shape, form, or  fashion

an individual who you saw as one actively seeking any charge being pursued against Mr. Bowman, was he?

**Burke**:          No. <u>He never sought anything against anybody</u>.

[Burke Depo. at 122 (emphasis added); *see also* Paulk Depo. at 57-58 (to his knowledge, Dr. Hotz did nothing to instigate the prosecution)].

Even if Plaintiff could point to any specific evidence that Dr. Hotz urged the criminal proceedings by his cooperation in Burke's ongoing proceedings, this evidence would be rendered immaterial by Burke's uncontradicted testimony that the decision to prosecute was his alone. Like the testimony of the detective in *McLeod*, Burke's testimony is affirmative and conclusive evidence of the absence of any causal connection between acts attributable to Dr. Hotz and the decision to prosecute Plaintiff. *See McLeod*, 215 Ga. App. at 179, 449 S.E.2d at 897. Therefore, Plaintiff has not created a genuine issue of fact as to the first essential element of malicious prosecution, and Dr. Hotz is entitled to judgment as a matter of law.

### 2.      Dr. Hotz did not directly or indirectly urge the initiation of criminal proceedings.

Plaintiff has proffered no evidence that Dr. Hotz initiated the prosecution against Plaintiff by directly or indirectly urging the criminal proceedings. In Georgia,

> [t]he law draws a fine line of demarcation between cases where a party directly or indirectly urges (the initiation of) criminal proceedings and cases where a party merely relays facts to (one) who then makes an independent decision to arrest and prosecute. In the former case there is potential liability for malicious prosecution; in the latter case there is not.

*Kaiser*, 248 Ga. App. at 487, 546 S.E.2d at 867. *See also Atlantic Zayre v. Zachary*, 205 Ga. App. 481, 484, 422 S.E.2d 667, 668 (1992) (reversing judgment for plaintiff absent evidence that defendant actively sought prosecution of plaintiff or knowingly gave false information to the prosecution). In *Kaiser,* the court held that the defendant was not liable for malicious prosecution

where the prosecution "began, not with the provision of any information by [the defendant], but by happenstance during an ongoing [state] investigation" into other crimes and it was not until the defendant was contacted by investigators that she provided information. *Id.*

Likewise, in this case, the prosecution of Plaintiff began before anyone from law enforcement had spoken with Dr. Hotz. Plaintiff obviously believed before filing this lawsuit that Dr. Hotz had sworn out a warrant against him and that Dr. Hotz had testified before the first grand jury. Neither assumption is true. To the contrary, the facts are very clear and uncontradicted that Dr. Hotz did not take any action to initiate criminal proceedings against Plaintiff:

- Dr. Hotz never contacted any law enforcement officials regarding the Bowman Incident
  *[Burke Depo. at 31-33, 101-04, 107, 120, 122; Dr. Hotz Depo. at 12-15, 25, 53, 70-74; Bowman Depo. at 185];*

- Dr. Hotz never spoke with any law enforcement or prosecuting officials until he was contacted by Kelly Burke <u>after</u> the first indictment had been rendered
  *[Dr. Hotz Depo. at 12-15, 36, 72, 177; Burke Depo. at 32, 56-57, 101-02; Bowman Depo. at 62];*

- Dr. Hotz never swore out a warrant to have Bowman arrested or indicted
  *[Burke Depo. at 122];*

- Dr. Hotz did not even know that the district attorney intended to prosecute Plaintiff until after the return of the December 14th Indictment
  *[Dr. Hotz Depo. at 12-15, 36, 72, 177; Burke Depo. at 32, 56-57, 101-02];*

- Dr. Hotz did not provide the memo to the district attorney that formed the basis of Burke's decision to prosecute Plaintiff
  *[Burke Depo. at 21-23; Dr. Hotz Depo. at 162-163];*

- Dr. Hotz did not testify before the grand jury that rendered the December 14th Indictment
  *[Dr. Hotz Depo. at 12-15, 36 (admission of Plaintiff's counsel), 70; Burke Depo. at 26; Bowman Depo. at 18-23, 47]; and*

- Dr. Hotz agreed to testify before the grand jury on February 16, 2005, only at Burke's insistence
  *[Burke Depo. at 74-75; Dr. Hotz Depo. at 138-39; Bowman Depo. at 140-142].*

Plaintiff has proffered no evidence whatsoever to contradict any of the above facts. At least five (5) times during his deposition, counsel for Dr. Hotz asked Plaintiff to identify specific evidence of Dr. Hotz's actions or statements that instigated the criminal proceedings. [Bowman Depo. at 50-53, 63-64, 111, 140-42, 190-192.] Each time, Plaintiff responded with the conclusion that because he was indicted, Dr. Hotz therefore must have contacted the district attorney after the Bowman Incident. [*Id.*; *see, e.g., id.* at 57 ("I don't have to see [Dr. Hotz] walk into the District Attorney's office and sign charges or make a complaint, I was arrested; cause and effect.")]. Aside from this speculation, there is simply no admissible evidence that Dr. Hotz took any action to initiate the prosecution.

### 3.    Dr. Hotz did not unduly influence the decision to prosecute by giving information he knew to be false or misleading.

Plaintiff's allegations that Dr. Hotz knowingly gave false, misleading and perjurious testimony that influenced the prosecution have no evidentiary support. [Compl. at ¶ 16]. As an initial matter, Dr. Hotz did not provide any testimony or other information to authorities prior to Plaintiff's prosecution. Thus, he could not have provided information that influenced the decision to prosecute.

Dr. Hotz cannot be held responsible for McCormick's unauthorized act of providing information to the district attorney. It is undisputed that McCormick prepared his Memo and provided it to the district attorney's office without the knowledge or consent of Dr. Hotz. [Burke Depo. at 21-23; Dr. Hotz Depo. at 162-63]. Moreover, it was investigator Jim Paulk, not Dr. Hotz, who communicated the contents of the McCormick Memo to the grand jury on December

14, 2005. [Burke Depo. at 22, 24; Paulk Depo. at 34-35]. Kelly Burke did not discuss the incident with Dr. Hotz until after the return of an indictment against Plaintiff for aggravated assault and burglary. [Dr. Hotz Depo. at 12-15, 36, 72, 177; Burke Depo. at 32, 56-57, 101-02; Bowman Depo. at 62]. Thus, Dr. Hotz did not provide any information – false or otherwise – that influenced Burke's decision to prosecute Plaintiff.

Moreover, Plaintiff admits to having no knowledge of Dr. Hotz's grand jury testimony before the second grand jury. [Bowman Depo. at 49]. Nonetheless, Plaintiff "believes" that Defendant knowingly gave false information to the grand jury. Even if Dr. Hotz's testimony before the second grand jury could somehow be considered to have contributed to the decision to prosecute, Plaintiff has admitted that he has no evidence that Dr. Hotz lied to the grand jury or the prosecutors:

> **Q:**      Right, but I am trying to find out, to pinpoint what was the false information you contend he gave to the District Attorney, if you know.
>
> **Bowman**:      The information that they went forward with on a burglary and aggravated assault charge.
>
> **Q**:      What false information did Dr. Hotz provide, if you know?
>
> **Bowman**:      I don't know.

[Bowman Depo. at 217].

Plaintiff's failure to introduce any evidence to support a finding that Dr. Hotz instigated the criminal proceedings is sufficient in and of itself to require summary judgment in favor of Dr. Hotz; however, that coupled with a lack of evidence that he gave any false testimony to unduly influence the decision-maker clearly mandates summary judgment in favor of Dr. Hotz.

**B.     There Was Probable Cause to Indict Plaintiff.**

A second independent element requiring summary judgment in favor of Dr. Hotz is that Plaintiff's indictment by a grand jury is prima facie evidence of probable cause that Plaintiff has failed entirely to overcome. Plaintiff cannot identify any specific evidence that Dr. Hotz had no reasonable grounds to believe that Plaintiff was guilty. Therefore, this Court must presume the existence of probable cause and grant summary judgment in favor of Dr. Hotz.

In a malicious prosecution claim, the existence of probable cause is an absolute defense. *Zohoury v. Home Depot*, 239 Ga. App. 454, 456, 521 S.E.2d 389, 391 (1999) (affirming summary judgment for the defendant who made the arrest based on a finding of probable cause). A lack of probable cause exists when "the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding <u>but his desire to injure the accused</u>." O.C.G.A. § 51-7-43; *see also West v. Baumgartner*, 228 Ga. 671, 676, 187 S.E.2d 665, 669 (1972) (affirming summary judgment for the defendant where "the plaintiff did not show that, at the time of the prosecution, the defendants had no reasonable grounds for believing that he was guilty of [the offense charged]"). Lack of probable cause may be shown "through evidence of a defendant's knowledge that the information being supplied is false or that it fails to set forth a full, fair and complete statement of the facts or conceals facts." *Brooks v. H & H Creek*, 223 Ga. App. 635, 637, 478 S.E.2d 451, 454 (1996). The court may find probable cause as a matter of law "[w]here the material facts are not in dispute or only one reasonable inference can be drawn from the evidence." *West*, 228 Ga. at 676, 187 S.E.2d at 669. To find probable cause, "it is not required that the prosecutor guarantee a conviction." *Id.* at 677, 187 S.E.2d at 669 (citation omitted). Moreover, Georgia's public policy favors determination of the existence of probable cause by the court in malicious prosecution cases. *Zohoury,* 239 Ga. App. at 456, 521 S.E.2d at

391; *Chen v. Tai*, 232 Ga. App. 595, 598, 502 S.E.2d 531, 534 (1998) (affirming summary judgment for the defendant on a malicious prosecution claim).

Indictment by a grand jury is prima facie, but not conclusive, evidence of probable cause which shifts the burden to the plaintiff to produce evidence that (1) probable cause did not exist for his indictment and prosecution and (2) that the charge against him was motivated by malice. *Arbee v. Collins*, 219 Ga. App. 63, 64, 463 S.E.2d 922, 925 (1996) (affirming grant of summary judgment to defendant where plaintiff failed to present evidence to support his allegation that his arrest and prosecution were racially motivated and therefore malicious); *see also Parks v. Norred & Assocs., Inc.*, 206 Ga. App. 494, 496, 426 S.E.2d 12, 15 (1992) (affirming summary judgment for defendant where the plaintiffs failed to present evidence to support their allegations of malice).

In this case, two separate grand juries returned indictments against Plaintiff. Therefore, prima facie evidence of probable cause exists and the burden shifts to Plaintiff to establish that (1) probable cause did not exist for Plaintiff's indictment and prosecution, and (2) Dr. Hotz brought charges out of malice or knowingly provided false or incomplete information to the prosecutors. Plaintiff acknowledges the grand jury indictments in his Complaint, but fails to provide evidence to overcome the presumption they create. [Compl. at ¶ 6, 9, 11 and Exhibits 1-3 thereto]. Even viewing the evidence in the light most favorable to Plaintiff, he has failed entirely to rebut the prima facie evidence of probable cause. Moreover, the evidence developed during discovery in this case reveals that it was reasonable for the grand jury to indict Plaintiff for his alleged conduct during the incident at Dr. Hotz's home.

Pursuant to O.C.G.A. § 51-7-43, "[l]ack of probable cause shall be a question for the jury, under the direction of the court." O.C.G.A. § 51-7-43. Accordingly, where the facts are not

in dispute, the existence of probable cause is properly determined by the court. *See West*, 228 Ga. at 676, 187 S.E.2d at 669. In *Day Realty Associates, Inc. v. McMillan*, the Georgia Supreme Court explained that:

> [t]he courts have always distrusted malicious prosecution actions, and have retained a strong hand over them. For this reason the existence of probable cause, which involves only the conduct of a reasonable man under the circumstances, and does not differ essentially from the determination of negligence, usually is taken out of the hands of the jury, and held to be a matter for decision by the court.

247 Ga. 561, 562, 277 S.E.2d 663, 664 (1981) (reversing judgment for plaintiff); *Zohoury,* 239 Ga. App. at 456, 521 S.E.2d at 391 (affirming summary judgment for defendant).

In this case, Plaintiff has failed to meet his burden of overcoming the presumption of probable cause established by the grand jury indictments, and Dr. Hotz is therefore entitled to summary judgment.

### C.    There Is No Evidence of Malice on the Part of Dr. Hotz.

Plaintiff has failed to meet his burden as to the issue of malice for two reasons. First, Plaintiff has introduced no evidence that Dr. Hotz took any action to prosecute Plaintiff. *See, supra*, section II.A. Second, even if there were some evidence that Dr. Hotz acted to initiate the prosecution of Plaintiff, there is no evidence whatsoever of malice. Summary judgment is appropriate for the defendant in the absence of such evidence. *See Arbee*, 219 Ga. App. at 64, 463 S.E.2d at 925 (affirming summary judgment where plaintiff provided no evidence to support his allegation of that his arrest prosecution was racially motivated).

Plaintiff must introduce specific evidence of malice on the part of Dr. Hotz to carry his burden as to this element and to overcome the presumption of probable cause raised by the grand jury indictments. *Id*. Under Georgia law, "[m]alice consists in personal spite or in a general

disregard of the right consideration of mankind, directed by chance against the individual injured." O.C.G.A. § 51-7-2; *see also Desmond*, 243 Ga. App. at 75, 532 S.E.2d at 467. Georgia law is clear that "[a] total lack of probable cause is a circumstance from which malice may be inferred; however, the inference may be rebutted by proof." O.C.G.A. § 51-7-44. Mere allegations will not suffice to rebut a presumption of malice. *See Coleman v. Miller*, 117 F.3d 527, 529 (11th Cir. 1997) (applying Georgia law and explaining that "in order to survive summary judgment, appellant must present more than 'mere allegations'"); *see also Arbee*, 219 Ga. App. at 66, 463 S.E.2d at 926 (affirming summary judgment where plaintiff provided no evidence to support his allegation of malice).

Although Plaintiff claims Dr. Hotz acted out of spite, Plaintiff can point to no specific evidence of malice. [Bowman Depo. at 182-84, 190-91]. The record lacks any statements or actions by Dr. Hotz that would allow an inference of malice. In contrast, the evidence affirmatively shows a lack of malice on the part of Dr. Hotz. Burke testified that he saw no signs of malice in Dr. Hotz. [Burke Depo. at 97-100]. Dr. Hotz testified that he cooperated with the prosecutors because he felt it was his duty, not because of personal spite towards Bowman. [Dr. Hotz Depo. at 138-39; *see also* Burke Depo. at 74-75].

Indeed, the fact that nearly one and one-half years elapsed before Plaintiff's prosecution allows for a strong inference that there was no malice. If Dr. Hotz had intended to harm Plaintiff in any way, he would have taken some action against Plaintiff immediately. Instead, Dr. Hotz took no action against Plaintiff during that time period, and the prosecution was initiated after all that time only because of Burke. When asked repeatedly how Dr. Hotz could have evidenced any malice given the extensive delay before Plaintiff's prosecution, Plaintiff responded:

**Bowman**:    . . . I believe that there is some explanation, reason why he wanted to prosecute me and there is a reason why he waited so long. And generally

- 22 -

> when that happens, there's something amiss, something to their advantage, some reason. I don't know that reason."

[*Id.* at 184]. There is, however, no explanation other than that Dr. Hotz harbored no malice toward Plaintiff and took no role in his prosecution other than to cooperate with Burke's request that he testify before the grand jury on one occasion.

Taking the evidence in the light most favorable to Plaintiff, there is no genuine dispute of material fact as to the element of malice, and Dr. Hotz is entitled to judgment as a matter of law.

## III.    DR. HOTZ IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Plaintiff's claim for intentional infliction of emotional distress fails as a matter of law because there is no genuine dispute of fact as to two essential elements. First, Plaintiff admits that he has been emotionally healthy and suffered no emotional distress in recent years. Second, Plaintiff's inability to establish malice on the part Dr. Hotz precludes a finding of extreme and outrageous conduct.

Under Georgia law, the elements of intentional infliction of emotional distress are (1) intentional or reckless conduct, (2) conduct that is extreme and outrageous, (3) a causal connection and (4) severe emotional distress. *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227, 230, 335 S.E.2d 445, 447-48 (1985). Plaintiff loses his case if he cannot satisfy his burden on any one of these four elements.

Plaintiff has failed to introduce evidence of extreme and outrageous conduct on the part of Dr. Hotz. Georgia law is clear that "[t]he defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Desmond*, 243 Ga. App. at 75, 532 S.E.2d at 468. In *Desmond*, the court explained that "[b]ecause a magistrate found that [defendant] had probable cause to

prosecute plaintiff, the filing of charges against [plaintiff] cannot serve as the basis for his claim." *Id*. Likewise, even if Dr. Hotz had initiated the prosecution of Plaintiff, this conduct would not constitute extreme and outrageous conduct because the grand jury found probable cause to prosecute.

Additionally, Plaintiff cannot show extreme and outrageous conduct because he has failed to produce evidence of malice. The burden for a claim of intentional infliction of emotional distress is higher than the burden for malicious prosecution. *See Kaiser*, 248 Ga. App. at 488, 546 S.E.2d at 868 (affirming summary judgment for defendant as to plaintiff's claim for intentional infliction of emotional distress and explaining that "[e]ven a showing of actual malice or that degree of aggravation which might entitle one to recover punitive damages for another tort will not suffice"). In this case, Plaintiff has shown no evidence of malice. *See, supra,* section II.B.3. Therefore, he cannot possibly satisfy his burden for showing extreme and outrageous conduct.

Perhaps most incredibly, Plaintiff admitted that he has suffered no emotional distress. The plaintiff must show that "the distress inflicted is so severe that no reasonable person could be expected to endure it." *O'Neal v. Home Town Bank of Villa Rica*, 237 Ga.App. 325, 331, 514 S.E.2d 669, 676 (1999). In his deposition of November 30, 2006, Plaintiff testified that he has not experienced any emotional problems in the previous two or three years:

> **Q:**       From an emotional and mental standpoint, you feel that you are now and have been over the last two or three years, what we would call emotionally and mentally healthy, true?
>
> **Bowman:**    Not only don't feel it, I know.
>
> **Q:**       You know that in fact over the last couple years you have been emotionally and mentally healthy, true?
>
> **Bowman:**    Healthy, yes.

**Q:**                    Emotionally and mentally, true?

**Bowman:**        Yes.

[Bowman Depo. at 75]. The record is devoid of any evidence showing severe emotional distress that would contradict Plaintiff's admission, and Plaintiff has not designated any experts to testify as to any emotional distress that he might have suffered. Therefore, Plaintiff has not satisfied his burden of proof, and Dr. Hotz is entitled to judgment as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Dr. Hotz respectfully requests that this Court grant his motion for summary judgment on all counts of Plaintiff's Complaint against him.

Respectfully submitted this 16th day of May, 2007.

                                    */s/ L. Lin Wood*
                                    L. Lin Wood
                                    Georgia Bar No.:  774588
                                    Nicole Jennings Wade
                                    Georgia Bar No.:  390922
                                    Margaret M. Kane
                                    Georgia Bar No.:  330531

**POWELL GOLDSTEIN LLP**
One Atlantic Center
Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA  30309-3488
Telephone:     (404) 572-6600
Facsimile:     (404) 572-6999

                                    Attorneys for Defendant James A. Hotz

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

JAMES BOWMAN,                    )
                                 )
        Plaintiff,               )
                                 )
v.                               )    CIVIL ACTION FILE NO.:
                                 )    1:06-CV-99
                                 )
JAMES A. HOTZ,                   )
                                 )
        Defendant.               )

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of May, 2007, the foregoing pleading was filed electronically using the CM/ECF system automatically serving the following attorneys of record via email:

| Bobby Lee Cook, Esq.<br>Cook & Connelly<br>P. O. Box 370<br>Summerville, Georgia 30747 | J. Converse Bright<br>P. O. Box 5889<br>Valdosta, Georgia 31603-5889 |
|---|---|

This 16th day of May, 2007.

_/s/ Margaret M. Kane_
Margaret M. Kane
Georgia Bar No.: 330531

**POWELL GOLDSTEIN LLP**
One Atlantic Center, Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA 30309-3488
Telephone:    (404) 572-6600
Facsimile:    (404) 572-6999

Attorneys for Defendant James A. Hotz

::ODMA\PCDOCS\ATL\1163302\1